# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| LARRY BERKE<br>2602 West Languid Lane<br>Phoenix, AZ  85086,<br><br><div align="center">Plaintiff,</div><br><div align="center">v.</div><br><br>FEDERAL BUREAU OF PRISONS,<br>320 First St., NW<br>Washington, DC 20534<br><br>Serve:<br>    Ronald C. Machen, Jr.<br>    United States Attorney's Office<br>    555 4th Street, NW<br>    Washington, DC 20530<br><br>    Eric H. Holder, Jr.<br>    U.S. Attorney General<br>    Department of Justice<br>    950 Pennsylvania Avenue, Room B-103<br>    Washington, DC  20530-0001<br><br>and<br><br>CHARLES E. SAMUELS, JR.,<br>in his official capacity as Director of the<br>United States Bureau of Prisons<br>320 First St., NW<br>Washington, DC 20534<br><br><div align="center">Defendants.</div> | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br><br>Case No. |

## MOTION FOR TEMPORARY RESTRAINING ORDER

Larry Berke ("Plaintiff"), by his undersigned attorneys and pursuant to Federal

Rules of Civil Procedure Rule 65 and LCvR 65.1, moves for a Temporary Restraining Order.

Plaintiff, by the accompanying Complaint [for Injunctive Relief] (the "Complaint"), and Plaintiffs' Memorandum of Points and Authorities in support of its Motion for a Temporary Restraining Order (the "Memorandum") can establish each of the prerequisites for an injunction as set forth in *Council on American-Islamic Rels. v. Gaubatz*, 667 F. Supp. 2d 67, 74 (D.D.C. 2009). To obtain injunctive relief through a temporary restraining order the moving party must show: "(1) a substantial likelihood of success on the merits, (2) that it would suffer irreparable injury if the injunction were not granted, (3) that an injunction would not substantially injure other interested parties, and (4) that the public interest would be furthered by the injunction." *Gaubatz*, 667 F. Supp. 2d at 74.

As the accompanying Complaint demonstrates:

(1) Defendants, by the organizations, systems, policies, practices, and conditions described above, have violated and continue to violate Section 794 of the Rehabilitation Act and the Constitution of the United States; (2) this Court has authority pursuant to 28 USC §§ 2201 and 2202, and Rules 57 and 65 of the Federal Rules of Civil Procedure to enter such injunctive and declaratory relief against Defendants and in favor of Mr. Berke as it deems appropriate to remedy the violations of the laws of the United States and to prevent future violations of those laws; (3) unless an injunction is issued, Mr. Berke will be in imminent physical danger by virtue of being placed in the United States Penitentiary (USP) Florence ADMAX Satellite Camp ("ADX Camp") located in Florence, Colorado, which ADX camp possesses no means to facilitate communication for deaf prisoners in the event of medical emergencies or other security events that could pose an immediate danger to Mr. Berke; (4) greater injury will be inflicted on Mr. Berke for each item of relief the court denies than will be inflicted on the Defendants if the court grants the item; [(5) the Court is not granting any item of relief for which the court lacks

jurisdiction under § 4-307;] (6) Plaintiff has no adequate remedy at law; and (7) each public officer who has a duty to protect the safety and related interests of Plaintiff has failed or is unable to give adequate protection;

The grounds for this Motion are more particularly set forth in the accompanying Complaint and Memorandum, both of which are incorporated herein by reference.

WHEREFORE, Plaintiff Larry Berke respectfully requests the following relief:

1.      That a temporary restraining order be entered to order Defendants FEDERAL BUREAU OF PRISONS ("BOP"), and CHARLES E. SAMUELS, JR., in his official capacity as Director of the United States Bureau of Prisons, individually and collectively, and all persons acting in any manner at their behest or in concert with them, directly or indirectly (the "Defendants"), to; preliminarily until final hearing and perpetually thereafter:

(a)      make available at the ADX Camp in preparation for Mr. Berke's incarceration: (i) qualified ASL interpreters to enable Mr. Berke to communicate effectively with medical and mental healthcare professionals, institution staff, educational and vocational instructors, religious clergy, work program managers and coordinators, and disciplinary officers; (ii) non-aural notification of emergencies or other important events and announcements, e.g., a vibrating pager, visual alarms, vibrating watch, vibrating bed device, and/or message boards; (iii) equal and full access to appropriate and effective telecommunication devices for the deaf, including full and equal access to a videophone (items (i)-(iii) herein constituting "Auxiliary Aids"); and;

(b)      delay Mr. Berke's BOP surrender date for his criminal conviction until such Auxiliary Aids have been made available at the ADX Camp.

2.      That judgment be entered against Defendants in favor of Mr. Berke for the costs of litigation, including reasonable attorneys' fees and costs under 28 U.S.C. § 2412(d)(1)(A);

3.      That the Court retain jurisdiction of this matter until Defendants demonstrate that they have fully complied with the orders of this Court, and that there is a reasonable assurance that Defendants will continue to comply in the future absent continuing jurisdiction; and

4.      That the Court award Mr. Berke any further relief that the Court deems appropriate, just and equitable, including additional attorneys' fees and costs.


Dated: August 14, 2012                              Respectfully submitted,


                                                    Constantinos G. Panagopoulos
                                                    DC Bar No. 430932
                                                    Ballard Spahr LLP
                                                    1909 K Street, N.W., 11th Floor
                                                    Washington, D.C.  20006
                                                    Telephone: (202) 661-2202
                                                    Facsimile: (202) 661-2299
                                                    cgp@ballardspahr.com

                                                    Ivy Finkenstadt DC Bar No. 488147
                                                    E. Elaine Gardner  DC Bar No. 271262
                                                    Washington Lawyers' Committee for Civil
                                                    Rights and Urban Affairs
                                                    11 Dupont Circle, N.W. Suite 400
                                                    Washington, D.C. 20036
                                                    T: 202-319-1000
                                                    F: 202-319-1010
                                                    elaine_gardner@washlaw.org
                                                    ivy_finkenstadt@washlaw.org

                                                    *Counsel for Plaintiff*

# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| LARRY BERKE<br>2602 West Languid Lane<br>Phoenix, AZ 85086, | )<br>)<br>)<br>) |
| Plaintiff, | ) |
| v. | )<br>) |
| FEDERAL BUREAU OF PRISONS,<br>320 First St., NW<br>Washington, DC 20534 | )<br>)     Case No.<br>) |
| Serve:<br>   Ronald C. Machen, Jr.<br>   United States Attorney's Office<br>   555 4th Street, NW<br>   Washington, DC 20530 | )<br>)<br>)<br>)<br>)<br>) |
|    Eric H. Holder, Jr.<br>   U.S. Attorney General<br>   Department of Justice<br>   950 Pennsylvania Avenue, Room B-103<br>   Washington, DC 20530-0001 | )<br>)<br>)<br>)<br>)<br>) |
| and | )<br>) |
| CHARLES E. SAMUELS, JR.,<br>in his official capacity as Director of the<br>United States Bureau of Prisons<br>320 First St., NW<br>Washington, DC 20534 | )<br>)<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

## PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF HIS MOTION FOR A TEMPORARY RESTRAINING ORDER

Larry Berke ("Plaintiff") submits the following memorandum of points and

authorities in support of Mr. Berke's motion for a temporary restraining order ("TRO") and

injunction.[1] Plaintiff can establish each of the prerequisites for an injunction as set forth in *Council on American-Islamic Rels. v. Gaubatz*, 667 F. Supp. 2d 67, 74 (D.D.C. 2009). To obtain injunctive relief through a temporary restraining order the moving party must show: "(1) a substantial likelihood of success on the merits, (2) that it would suffer irreparable injury if the injunction were not granted, (3) that an injunction would not substantially injure other interested parties, and (4) that the public interest would be furthered by the injunction." *Gaubatz*, 667 F. Supp. 2d at 74.

This memorandum will demonstrate that: (1) Defendants, by the organizations, systems, policies, practices, and conditions described herein, have violated and continue to violate Section 794 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 794 et seq. (hereinafter "Rehabilitation Act"), (2) unless an injunction is issued, Mr. Berke will be in imminent physical danger by virtue of being placed in the United States Penitentiary (USP) Florence ADMAX Satellite Camp ("ADX Camp") located in Florence, Colorado, which ADX camp possesses no means to facilitate communication for deaf prisoners in the event of medical emergencies or other security events that could pose an immediate physical danger to Mr. Berke; (3) greater injury will be inflicted on Mr. Berke for each item of relief the court denies than will be inflicted on the Defendants if court grants the item; and (4) due to the systemic violations of the Rehabilitation Act toward deaf detainees as a result of Defendant's organizations, systems, policies, practices, and conditions, the public interest will be served by the granting of such an injunction.

## I.   <u>BACKGROUND</u>

---

[1] Pursuant to LCvR 65.1(a), prior to filing this motion, Plaintiff provided Defendant actual notice of the filing, including copies of all [pleadings and papers].

This memorandum in support of an injunction through a motion for a temporary restraining order is the result of a lawsuit concerning the imminent likelihood of Mr. Berke being placed in physical danger due to being deaf and being placed in the custody and care of the Federal Bureau of Prisons ("BOP"), and Defendants' unwillingness to accommodate such disability, in violation of the requirements of the Rehabilitation Act. Mr. Berke is a Deaf individual awaiting his BOP surrender date of August 23, 2012, for a non-violent criminal conviction. The BOP generally, and the facility to which Mr. Berke has been assigned – the ADX Camp located in Florence, Colorado – possesses no means to facilitate communication for Deaf prisoners in the event of medical emergencies or other security events that could pose an immediate danger to Mr. Berke, and also prevents him from participation in other programs and activities provided by the BOP. The ADX Camp has no telephone equipment (i.e., videophones) for Deaf inmates, visual safety alarms for emergencies other than fires, or any means to facilitate communication for deaf prisoners such as visual pagers. As a result of this lack of communication devices and services, or auxiliary aids, such a placement would violate federal law.

The motion for a TRO is an effort to immediately preempt the deprivation of Mr. Berke's ability to effectively communicate that will inevitably occur upon his upcoming placement into the BOP's custody. This deprivation will occur as a result of the lack of qualified American Sign Language ("ASL") interpreters and other auxiliary aids. Defendants' illegal and discriminatory conduct will preclude Mr. Berke's ability to participate in institution proceedings, to effectively take part in any rehabilitative, educational, or religious programs, and to communicate effectively with others within and outside the institution.

As of this filing, Mr. Berke is not a prisoner.  Pursuant to his Third Order Amending Judgment of Conviction, Mr. Berke was "committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of 24 months" on December 19, 2011, but does not have to "surrender himself for service" "at the institution designated by the Bureau of Prisons … [until] August 23, 2012 at 12:00 p.m."  Third Order Amending Judgment of Conviction, attached as Exhibit 1.

Mr. Berke's sentencing judge recommended that prior to his incarceration the BOP "be made aware of the defendant's hearing impaired medical condition and where he can be accommodated," "that the defendant be designated to a facility, which will abide by the American's with Disability Act [sic],"[2] and "that the defendant be designated to a facility geographically near his family members."  Mr. Berke's Judgment of December 19, 2011, attached as Exhibit 2.

Mr. Berke has been deaf since birth. He is considered "Profoundly Deaf," which is the most severe category of hearing loss, and means that while he can hear some very loud sounds, he is unable to understand speech, and cannot hear or understand speech on a telephone.  He does not wear hearing aids.

Mr. Berke is married to a deaf woman, and his two oldest children are deaf.  His three youngest children (ages 10, 8, and 4) are hearing, but fluent in American Sign Language.  Mr. Berke's two youngest children are not yet able to read or write fluently, and therefore their only form of communication with their father is sign language.

---

[2]     Notwithstanding the sentencing judge's recommendation, the BOP is subject to The Rehabilitation Act of 1973, 29 U.S.C. §§ 794 *et seq.*, not the Americans with Disabilities Act. The two laws have virtually identical requirements as to provision of auxiliary aids and services to deaf individuals, but the Americans with Disabilities Act does not apply to the federal government.

Mr. Berke's native language is American Sign Language ("ASL"), a complex language that employs signs made with hands, facial expressions, and body language. ASL is not a mere translation of ASL signs to English words; it is a distinct language with distinct vocabulary, syntax, and grammar.[3] Mr. Berke requires a qualified ASL interpreter to communicate effectively with persons who do not know and use ASL.

Mr. Berke does not read lips. In general, lip reading is a very difficult and unreliable form of communication. It is extremely challenging to lip-read English because only a small fraction of the sounds used in speaking are clearly visible on the mouth and many sounds appear identical on the lips. In addition to the difficulties in lip-reading, the ability to accurately lip-read is greatly affected by the speaker's accent, facial bone structure, facial musculature, facial hair, lighting, distance from the lip reader, and other external factors.[4]

Mr. Berke uses videophones to communicate with friends and family around the country, including his deaf adult children, brother, and several cousins. He uses video relay service with

---

[3]     The National Institute on Deafness and Other Communication Disorders (NIDCD), one of the Institutes that comprise the National Institutes of Health, states on its website that "ASL is a language completely separate and distinct from English. It contains all the fundamental features of language—it has its own rules for pronunciation, word order, and complex grammar. While every language has ways of signaling different functions, such as asking a question rather than making a statement, languages differ in how this is done. For example, English speakers ask a question by raising the pitch of their voice; ASL users ask a question by raising their eyebrows, widening their eyes, and tilting their bodies forward." (*American Sign Language*, NIH Publication No. 11-4756, Updated June 2011, http://www.nidcd.nih.gov/health/hearing/pages/asl.aspx, last visited August 10, 2012)

[4]     A study by the Institute of Biomedical Engineering at the University of Toronto found that only about 41% of speech was understood via lipreading. *Peripheral vision lipreading aid*, Ebrahimi D, Kunov H., IEEE Trans Biomed Eng. 1991 Oct; 38(10):944-52 (Abstract).

hearing friends and acquaintances. None of his friends or family own older telecommunication equipment, such as the generally outmoded telecommunication devices for the deaf (TTY's);[5] all use videophones.

## II.    LEGAL ARGUMENT

To obtain injunctive relief through a temporary restraining order the moving party must show: "(1) a substantial likelihood of success on the merits, (2) that it would suffer irreparable injury if the injunction were not granted, (3) that an injunction would not substantially injure other interested parties, and (4) that the public interest would be furthered by the injunction." *Council on American-Islamic Rels. v. Gaubatz*, 667 F. Supp. 2d 67, 74 (D.D.C. 2009).

### A.    Substantial Likelihood of Success on the Merits

The Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service."

To state a claim under section 504 of the Rehabilitation Act (29 U.S.C. § 794), a claimant must (1) be an individual with a disability (2) who is otherwise qualified for participation in a program or activity (3) of an executive agency, and who is (4) denied the benefits or subjected to discrimination under that program or activity. (*American Council of the Blind v. John W. Snow*, 311 F. Supp. 2d 86 at 88 (D.D.C. 2004))

---

[5]     In a recent news article, a Deaf individual was quoted as stating that "This video relay service has made the old telephone typewriter or T-T-Y obsolete."  FCC cuts could cut video phone services for the deaf, Deaf Times, June 11, 2010, http://deaftimes.com/usa-l/fcc-cuts-could-cut-video-phone-services-for-the-deaf/, accessed August 14, 2012).

1.    An Individual with a Disability

The term "individual with a disability" means any person who (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities; (ii) has a record of such an impairment; or (iii) is regarded as having such an impairment. (*See* 29 U.S.C. § 705). Mr. Berke's deafness is not in dispute. Mr. Berke's sentencing judge recommended that prior to his incarceration the BOP "be made aware of the defendant's hearing impaired medical condition and where he can be accommodated," Mr. Berke's Judgment of December 19, 2011, attached as Exhibit 2.

Mr. Berke has been deaf since birth, is considered "Profoundly Deaf," is unable to understand speech, and cannot hear or understand speech on a telephone) and is therefore a qualified individual with a disability within the meaning of the Rehabilitation Act, 29 U.S.C. § 705(20).

2.    Otherwise Qualified for Participation in a Program or Activity

The Federal Bureau of Prisons (the "BOP") is an agency of the U.S. Department of Justice ("DOJ") (*See* http://www.bop.gov) and is therefore subject to DOJ's applicable policies and regulations. The DOJ's regulations implementing the Rehabilitation Act recognize that activities of its agencies are programs or activities conducted by an Executive Agency of the United States government, and that "the agency shall furnish appropriate *auxiliary aids* where necessary to afford a handicapped person an equal opportunity to participate in, and enjoy the benefits of, a program or activity conducted by the agency." 28 C.F.R. § 39.160(a)(1) (emphasis added).

The operations of the BOP, including the departments, agencies, programs and instrumentalities at the ADX Camp such as Health Services, Psychology Services, the Education Department and its associated programs, Vocational and Occupational Training programs,

Inmate Skills Development Initiative, and work programs such as Federal Prison Industries, are "program[s] or activit[ies] conducted by an Executive Agency" within the meaning of 29 U.S.C. § 794(a).

Auxiliary aids include, but are not limited to, interpreters and telecommunication devices for deaf persons. 28 C.F.R. § 39.103. In addition, the DOJ's regulations implementing the Rehabilitation Act additionally mandate that "[i]n determining what type of auxiliary aid is necessary, the agency shall give primary consideration to the requests of the handicapped person." 28 C.F.R. § 39.160(a)(1)(i).

3.    Program or Activity is of an Executive Agency

The Federal Bureau of Prisons (the "BOP") is an agency of the U.S. Department of Justice. (*See* http://www.bop.gov), and the administration of its facilities and activities related to those in its care therefore constitute programs or activities of an Executive Agency. The BOP is therefore an executive agency within the meaning of 29 U.S.C. § 794(a).

4.    Is Denied the Benefits or Subjected to Discrimination Under the Program or Activity

Whether an individual has been denied the benefits of a program or activity or has been discriminated against turns on whether the individual has been afforded meaningful access to the program or activity. Although meaningful access to programs or activities does not require modifications "that would plainly be at odds with the purpose of a program," the standard does not have precise boundaries. *Am. Council of the Blind*, 311 F. Supp. 2d at 88-89 (D.D.C. 2004). This court has determined that an individual is denied meaningful access if they are disproportionately burdened under the current arrangements. *Id.* at 89.

As part of its rehabilitative services, the BOP provides religious, educational, vocational, and rehabilitation classes and work programs for its detainees. The BOP's regulations state that

"no qualified handicapped person shall, because the agency's facilities are inaccessible to or unusable by handicapped persons, be denied the benefits of, be excluded from participation in, or otherwise be subjected to discrimination under any program or activity conducted by the agency." 28 C.F.R. § 39.149.  The ADX Camp currently has virtually no auxiliary aids to allow effective communication for deaf prisoners, and has no telephones useable by Deaf inmates, visual alarms, or regular ASL interpreters.  Because the auxiliary aids required under 28 C.F.R. § 39.160(a)(1) are not present, Mr. Berke will not be aware of important daily activities, will be unable to communicate effectively with correctional officers and staff members, will be deprived of knowledge of institution-wide safety or emergency announcements, and may be subject to disciplinary action stemming from Defendant's refusal to provide auxiliary aids to allow effective communication.  Mr. Berke will also be prevented from communicating equally and effectively with family, friends, and his counsel by telephone.  As noted, Mr. Berke uses videophones to communicate with friends and family, and uses video relay service with others, including his counsel.  Moreover, should the BOP assert that a TTY is available for him, none of his friends or family own older telecommunication equipment, such as the generally outmoded telecommunication devices for the deaf (TTY's); all use videophones, or related video relay services.  Videophones and TTY are incompatible technologies.

Defendants' failure to provide qualified ASL interpreters and other reasonable auxiliary aids for the deaf, will result in Mr. Berke being: (i) deprived of knowledge of institution-wide safety or emergency announcements; (ii) unable to communicate effectively with correctional officers and staff members; (iii) subject to disciplinary action stemming from Defendants' refusal to provide auxiliary aids to allow effective communication; (iv) deprived of meaningful participation in disciplinary proceedings; (v) unable to communicate effectively with healthcare

providers, raise medical issues, understand the treatments and medications they prescribe, or discuss mental health problems; (vi) excluded from participating in the same religious, educational, vocational, and rehabilitation classes and work programs as hearing detainees; (vii) deprived of knowledge of institution counts, meals and other important daily activities; and (viii) prevented from communicating equally and effectively with family, friends, and their counsel by telephone.

Because Mr. Berke would be disproportionately burdened in his attempts to utilize the programs and activities offered by the BOP by being placed in ADX Camp with no meaningful auxiliary aids, the BOP would be in violation of the Rehabilitation Act.

**B.      Irreparable Injury if Injunction Not Granted**

On April 6, 2012, police in Tacoma, Washington tasered, arrested and handcuffed an innocent deaf women who had called 911 to report being assaulted by a guest in her apartment. She used video telephone equipment to call 911 and report the incident. When police arrived within minutes, they had already received the name of the victim and name of the assailant, and had been informed that the victim was deaf. The victim was instructed to meet the police at the front door, which she did. Within seconds of arriving at the front door, the officers commanded her to stop (there is some dispute whether they spoke or held up their hands to signal for her to stop) and fired a two-barbed electric taser wire into the deaf, innocent victim's ribs and stomach. The victim had no previous arrests or criminal record. The victim was then arrested and held for three days before she was granted access to an interpreter, after which the prosecutor declined to prosecute the victim. The police officers claimed that the victim "was making a loud grunting noise, had a piercing stare in her eyes and had a clenched right fist in the air," which would of course be consistent with the situation but not indicative of a threat. Although the officers were informed by concerned neighbors that the victim was deaf, they still arrested her. (*See*

http://www.kirotv.com/news/news/crime-law/police-use-taser-deaf-crime-victim/nP9mZ/, last
accessed August 13, 2012).

In another case, a deaf man with a rifle in a public parking lot was shot and killed by
police after the police refused to allow a volunteer interpreter to approach the man. (*Family of
deaf man shot by police files suit*, April 9, 2003, http://www.sunjournal.com/node/254694,
accessed August 14, 2012). In other instances, the failure by state or local law enforcement
agencies to effectively communicate with Deaf individuals during interactions by law
enforcement officers with those Deaf individuals was determined in some cases to have resulted
in the unnecessary arrest of individuals, and was held to constitute a violation of the law. (*Police
Interactions with Deaf Persons*, 2009 (3) AELE Mo. L. J. 101, Mar. 2009).

As the examples above show, without appropriate communication provided by auxiliary
aids, there is a reasonable likelihood of misunderstandings between prison officials and Mr.
Berke due to his Deafness, which may result in unnecessary harm and danger to Mr. Berke.

Misunderstandings similar to those described above could easily occur at ADX Camp
during what would otherwise be routine interactions with corrections officials in a confined
space subject to heightened tension and the possibility of violence against Mr. Berke by
corrections officials and other detainees. Since Mr. Berke does not wear hearing aids, there is no
obvious outward indication of his deafness, and without appropriate auxiliary aids, he would be
unable to hear or respond to similar commands to stop if given by a corrections official not in
direct view of Mr. Berke.

In addition, all prisoners entering a new facility of the BOP are provided with an
"Admissions & Orientation" ("A&O") handbook outlining the rules of the facility. While Mr.
Berke is able to read the handbook, because of his inability to communicate questions about the

meaning of rules, many of them are rendered meaningless.  For example, the disciplinary policy
of the BOP lists a 307 level violation of refusing an order of any staff member carrying sanctions
as severe as disciplinary segregation and loss of good time.  Further clarification of these facility
rules, like many others, requires the ability to communicate effectively with a facility authority,
which is not facilitated without the provision of auxiliary aids, which ADX Camp does not
provide.

Upon information and belief, the ADX Camp does not provide visual safety alarms
(beyond fire), or any means to facilitate communication for deaf prisoners such as visual pagers,
or other auxiliary aids such as vibrating alarm clocks, pagers, vibrating bed devices or message
boards to accommodate the deaf. Mr. Berke would not hear a safety alarm or other
announcement.  He was informed by the BOP that he will not be permitted to bring his own
vibrating alarm clock to the Camp.

Upon information and belief, ADX Camp has no mechanism to alert Mr. Berke to
announcements made over the public address speaker system, such as meal announcements,
count calls, or meetings. A vibrating pager and/or visual paging system would allow Mr. Berke
to receive these messages.  Additionally, vibrating watches and vibrating bed devices would
provide non-aural alarm notifications and permit Mr. Berke to timely attend scheduled activities
at the ADX Camp.  The Defendants do not provide these devices to those in their custody.

Given the number of corrections officials within the BOP, and the potential for similar
misunderstandings within ADX Camp during any number of interactions, Mr. Berke is at risk of
immediate irreparable physical harm and injury as well as harm to his long-term prospects of
minimizing his time served and losing the benefits provided to other detainees if placed in ADX
Camp at this time, due to the lack of auxiliary aids.

**C.     Injunction Will Not Substantially Injure Other Interested Parties**

Mr. Berke has made his needs known to the BOP through video relay telephone calls to

the ADX Camp, where he spoke with a Ms. Grisenti and a Ms. Barker in Camp Records. In

addition, the court referenced his disability in the Judgment requesting the BOP to address his

needs in the housing designation.  Under the Rehabilitation Act, the BOP is not required to "take

any action that it can demonstrate would result in a fundamental alteration in the nature of a

program or activity or in undue financial and administrative burdens." 28 C.F.R. § 38.150.  The

BOP has, however, stated that it is committed to providing "[a] safe environment for both staff

and inmates" and "[s]taff who are ethical, professional, well-trained, and diverse" (*See*

http://www.bop.gov/about/core_values.jsp).

Defendants have not met their burden under 28 C.F.R. § 39.160, to provide in writing

why the request from Mr. Berke or his sentencing judge to "furnish appropriate auxiliary aids

where necessary to afford a handicapped person an equal opportunity to participate in, and enjoy

the benefits of, a program or activity conducted by the agency," would "fundamentally alter the

program or activity or would result in undue financial and administrative burdens." Under the

CFR provision,

> [t]he agency has the burden of proving that compliance with § 39.160 would result in
> such alteration or burdens. The decision that compliance would result in such alteration
> or burdens must be made by the Attorney General or his or her designee after considering
> all agency resources available for use in the funding and operation of the conducted
> program or activity, and must be accompanied by a written statement of the reasons for
> reaching that conclusion.  If an action required to comply with this section would result in
> such an alteration or such burdens, the agency shall take any other action that would not
> result in such an alteration or such burdens but would nevertheless ensure that, to the
> maximum extent possible, handicapped persons receive the benefits and services of the
> program or activity.

28 C.F.R. § 39.160

The Defendants have not complied with the statutory and regulatory requirements imposed on the BOP under the Rehabilitation Act and have not shown that providing auxiliary aids such as those required by Mr. Berke would fundamentally alter the program or activity or would result in undue financial and administrative burdens, and this court should therefore conclude that Defendants will not be substantially injured by meeting the requirements imposed by the Rehabilitation Act.

**D.      Public Interest Furthered by Injunction**

The BOP and Mr. Samuels are on notice of the needs and entitlements of deaf individuals in their care.  Defendants Samuels and the BOP have been sued on at least two recent occasions for failure to provide interpreter services, videophones, and visual notifications to other prisoners and federal detainees.  (*Bryant v. U.S. Bureau of Prisons*, CV CAS 11-254 (C.D.Cal. Filed Jan.7, 2011); *Heyer et al v. U.S. Bureau of Prisons*, C.A. No. 5:11-cv-318 (E.D.N.C. Filed June 20, 2011).  As the applicable regulations make clear, BOP staff "shall not discriminate against inmates on the basis of . . . disability. . . .  This includes the making of administrative decisions and providing access to work, housing and programs."  (28 C.F.R. § 551.90, published in 63 Fed. Reg. 200 (Oct. 16, 1998) with remarks that, "The revised regulations make more clear the Bureau's intent that *all staff* are responsible for ensuring that their actions are in compliance."(emphasis added)).

Currently, deaf prisoners are not provided interpreters for: (i) the registration and orientation programs upon their arrival to the BOP's custody, (ii) periodic "Town Hall" or other meetings which cover rules and additional matters, (iii) at disciplinary proceedings in most facilities of the BOP, and (iv) for Unit Team meetings at facilities of the BOP.  In addition, placement in BOP facilities without auxiliary aids excludes deaf detainees from religious, educational and vocational programs, telephone services, and institution-wide alarms and

announcements. Defendants have done this by maintaining institutions without appropriate auxiliary aids, in violation of the Rehabilitation Act. Defendants' failure to maintain institutions with qualified interpreters and appropriate auxiliary aids deny deaf detainees, on the basis of their deafness, the same access to Defendants' services, benefits, activities, programs, and privileges as is afforded to hearing individuals. The failure to provide qualified interpreters and appropriate auxiliary aids and services to ensure an effective means of communication, and the failure to provide comparable access to services, benefits, activities, programs, and privileges, are policies, regular practices and/or customs of Defendants. This harm will occur unless and until Defendants are ordered by this Court to modify their policies, practices and procedures as demanded by the Rehabilitation Act, and such order is therefore in the public interest.

## III.    **CONCLUSION**

Mr. Berke is entitled to the injunctive relief sought through the issuance of a TRO because he has a substantial likelihood of success on the merits of his case alleging that the Defendants have violated and continue to violate Section 794 of the Rehabilitation Act, Mr. Berke will suffer irreparable injury and be subject to immediate and ongoing physical danger and imminent harm if the relief is not granted, such relief does not substantially injure the other interested parties, and the public interest would be furthered by the relief sought.

As set forth above, if placed into the custody of the BOP as currently scheduled, the Defendants will violate the relevant provisions of the Rehabilitation Act by excluding Mr. Berke from the participation in and discriminating against him under the programs conducted by the BOP, an Executive agency.

Dated: August 14, 2012

Respectfully submitted,

Constantinos G. Panagopoulos
DC Bar No. 430932
Ballard Spahr LLP
1909 K Street, N.W., 11th Floor
Washington, D.C.  20006
Telephone: (202) 661-2202
Facsimile: (202) 661-2299
cgp@ballardspahr.com

Ivy Finkenstadt DC Bar No. 488147
E. Elaine Gardner  DC Bar No. 271262
Washington Lawyers' Committee for Civil
Rights and Urban Affairs
11 Dupont Circle, N.W. Suite 400
Washington, D.C. 20036
T: 202-319-1000
F: 202-319-1010
elaine_gardner@washlaw.org
ivy_finkenstadt@washlaw.org

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I do hereby certify that on this 15th day of August 2012, I will cause the foregoing to be served by hand-delivery to the following:

> Federal Bureau of Prisons
> Office of Attorney General
> 320 First St., NW
> Washington, DC 20534
>
> Ronald C. Machen, Jr.
> United States Attorney's Office
> 555 4th Street, NW
> Washington, DC 20530
>
> Eric H. Holder, Jr.
> U.S. Attorney General
> Department of Justice
> 950 Pennsylvania Avenue, Room B-103
> Washington, DC  20530-0001
>
> Charles E. Samuels, Jr.
> Federal Bureau of Prisons
> 320 First St., NW
> Washington, DC 20534

Constantinos G. Panagopoulos