# EXHIBIT C

**EXPERT REPORT OF RICHARD LORENZO RAY**

**I.      Expert Qualifications:**

I have served as an ADA Compliance Coordinator for the City of Los Angeles Department on Disability for twenty-two (22) years.  My main job function is to ensure that City Departments comply with the Americans with Disabilities Act ("ADA") and with other applicable federal, state and local disability laws.  I am responsible for coordinating and monitoring department compliance with disability-related civil rights laws and regulations, which include assisting City departments with effective implementation of the 1973 Rehabilitation Act, the ADA, the ADA Amendments Act of 2008 and with other applicable disability laws and associated regulations.  I also provide technical assistance to City departments and facilitate access for individuals who are deaf, deaf-blind, and hard-of-hearing, and for individuals who have speech disabilities, to city-wide programs, activities, and services.  My responsibilities and duties include, but are not limited to, the following areas:

A.      Policies and Procedures

- Provide technical assistance to the Los Angeles Police Department ("LAPD") on various policy issues and modify procedures for obtaining sign language interpreters.

- Participate and provide technical assistance to the Los Angeles Police Commission's Professional Advisory Committee ("PAC") and its subcommittees, which include the Language/Culture Task Force and Diversity Training Redesign Committee.

B.      Technical Assistance for Accommodations to City Programs and Services

- Provide communication accommodations and auxiliary services to allow individuals access to City programs and services.

- Research the implementation of Video Remote Interpreting ("VRI") services, a program that will provide virtual sign language interpreting via videoconferencing to bridge communication between 1) City employees their supervisors, and law enforcement officers, and 2) deaf, deaf-blind, and hard of hearing individuals.

- Update and maintain emerging technology in City programs to provide telecommunication access to individuals who are deaf, deaf-blind and hard of hearing or who have other disabilities, which include 9-1-1 and 3-1-1 services, police stations, libraries, airports, and other City public points of contact.

- Provide technical assistance and resources to the Los Angeles Fire Department Community Emergency Response Team ("CERT") and the Mayor's Crisis Response Team ("CRT"), ensuring that their programs and services are accessible to individuals who are deaf, deaf-blind, and hard of hearing.

- Provide technical assistance and resources to City agencies, including the Emergency Management Department, the LAPD, the Los Angeles World Airports, and state and local governments agencies during natural disasters and crises.

C.   <u>Training and Outreach</u>

- Develop ADA Awareness and Sensitivity training programs for Departmental ADA Coordinators in all City departments.  These programs include instructions on issues such as proper ADA language, etiquette, and use of equipment and, most importantly, keeping all Departmental ADA Coordinators abreast of current law and emerging technologies.

- Provide training and conference presentations to over 1,500 individuals nationally, representing all levels of government.

D.   <u>Additional Qualifications</u>

I was born deaf with a decibel (db) loss of 80 in my right ear and 85 in my left ear.  I wore hearing aids during my childhood and into my adult life. Twenty years ago, I lost my remaining residual hearing in my right ear for unknown reasons.  My db loss fell to 115.  In November 2000, I lost my remaining residual hearing in my left ear and my db loss fell to 115.

I am the current Chair of the National Emergency Number Association (9-1-1) Accessibility Committee and a Co-Chair of the Federal Communications Commission's Emergency Access Advisory Committee ("EAAC").  I am also a member of the National Advisory Board of Preparedness & Emergency Response Research Center ("PERRC"), the University of Berkeley and California Public Utilities Commission ("CPUC"), Equipment Program Advisory Committee ("EPAC").  I have served as President of the California Association of the Deaf ("CAD"), Deaf and Disabled Telecommunications Programs ("DDTP"), Administrative Committee (DDTPAC), and TDD Placement Interim Committees; the Los Angeles County Metropolitan Transportation Authority, Service Authority for Freeway Emergency ("SAFE") Hearing and Speech Impaired Task Force; and the County of Los Angeles Commission on Human Relations, Media Image Coalition.

3

Please see Exhibit A for my complete *curriculum vitae*.

I have been retained by counsel for Mr. Larry Berke to work on this case at the rate of $150.00 per hour. I have been provided with, have reviewed, and have used the materials listed in Exhibit B in developing my report.  In the last four years, I have been deposed two times. I have not testified in court; however, I have testified at the hearing related to Mr. David Bryant v. Federal Bureau of Prison, Case No. 06704-016 in Tucson, Arizona.

I have made several presentations to various federal agencies and their staff members, including presentations to the Federal Communications Commission and the Centers for Disease Control and Prevention. Since 2008, I have been retained to work on three cases, including Mr. Berke, *Bryant v. Federal Bureau of Prisons*, Case No. 06704-016, and *Bass* v. *City of Alhambra*, Docket No. CV08-07660-ABC (JWJx), (C.D. Cal.).

## II. Executive Summary

Section 504 of the Rehabilitation Act of 1973 prohibits discrimination on the basis of disability in programs conducted by Federal agencies, in programs receiving Federal financial assistance, in Federal employment, and in the employment practices of Federal contractors. Further, it states:

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Services.[1]

The Federal Bureau of Prisons ("BOP") must provide inmates who are deaf and hard of hearing with an "equal opportunity to participate in, and enjoy the benefits of, a program or activity" offered by the BOP.[2] Based on my 22 years of experience working with the state and local governments, I strongly recommend that the BOP evaluate its programs and services for effective access for deaf and hard of hearing inmates. Therefore, in my opinion, the BOP must: a) assess, evaluate, analyze, and make reasonable modifications in policies, practices and procedures; b) remove barriers to access; and c) provide auxiliary aids and services including, but not limited to: Sign Language Interpreters; Assistive Listening Device Systems; Closed Captioning; Real-time Captioning services; Text Telephones (TTY/TDD); videophones and Video Remote Interpreting ("VRI") Services to ensure effective communication for individuals who are deaf, deaf-blind, and hard of hearing.

The accommodations, or method of assistance, requested by the deaf, deaf-blind, and hard of hearing inmates must be given "primary consideration" by the BOP.[3] Depending on the individual

---

[1] 29 U.S.C. § 794(a)
[2] 28 C.F.R. § 39.160(a)(1)
[3] 28 C.F.R. § 39.160(a)(1)(i).

inmate's request for accommodations and his or her disability, reasonable accommodations for deaf, deaf-blind, and hard of hearing inmates may include: allowing TTY phone users twice as long for phone calls because of the time involved in typing a conversation; providing videophones for telecommunication access; putting up visual emergency alarms and lighted signal boards in the correctional institutions; modifying the time or location of a treatment program to allow equal participation; providing hearing aids; and providing ASL interpreters (either in-person or through VRI).

Should discovery yield additional information on past and present policies and practices at the BOP, or on proposed changes by the BOP, I expect to examine that material and be given the opportunity to supplement the opinions offered in my report

## III. Scope of Report

This report is in response to an inquiry from attorneys for Mr. Larry Berke in his complaint against the BOP.  It is alleged that Mr. Berke, a deaf man, will not provided with reasonable accommodations at the Prison Camp in Tucson, Arizona.  I am providing recommendations for the implementation of a telecommunication system for Mr. Berke that also would apply to individuals who are deaf, deaf-blind, hard or hearing or have a speech disability for meaningful access to all prison services, programs, and activities.

## IV. Meaningful Access to Programs and Services

Auxiliary aids and services must be provided to ensure effective communication with incarcerated individuals who are deaf and hard of hearing.  Auxiliary aids and services[4] include, but are not limited to:  sign language interpreting services, assistive listening device systems, communication access real-time translation captioning services, videophones, Video Relay Services (VRS) and Video Remote Interpreting (VRI) Services.  These resources should be made available upon request.

Individuals who are deaf or hard of hearing coming in contact with correction officers (COs), prison staff, and healthcare and mental health professionals must have the same access to effective communication as any other person.  The Rehabilitation Act requires that the expressed choice of the individual with the disability, who is in the best position to know their needs, should be given primary

---

[4] *ADA Best Practices Tool Kit for State and Local Governments: General Effective Communication Requirements Under Title II of the ADA*, DEPARTMENT OF JUSTICE (February 27, 2007), http://www.ada.gov/pcatoolkit/chap3toolkit.htm.

consideration in determining which communication aid to provide.[5] The individual's choice should be honored unless it can be demonstrated that another effective method of communication exists. Because there is a wide range of communication needs among people who are deaf, deaf-blind, and hard of hearing, it is important to recognize and defer to the preference of these individuals.

### A.     Auxiliary Aids and Services for the Deaf and Hard of Hearing

There are a number of auxiliary aids and services available for the deaf and hard of hearing that enable those individuals to participate in meaningfully accessible programs and services in the same activities as hearing individuals and also alert them to the same dangers and announcements that hearing individuals are alerted to. These aids and services are widely available and are used in jails and prisons throughout the United States.

### 1.     Sign Language Interpreters

Sign Language Interpreters facilitate communication among deaf, deaf-blind, hard of hearing, and hearing people, using both English and American Sign Language (ASL). Generally, family members, friends, neighbors or individuals who are often emotionally involved, should not be utilized to provide sign language interpreting services. Also, it is important to be aware of potential conflicts of interest and/or privacy concerns when selecting an interpreter. For example, fellow employees, prisoners, inmates, or family members involved in a dispute, should not act as interpreters, except in cases of emergency. Therefore, it is strongly recommended that sign language interpreters are certified through National Registry of Interpreters for the Deaf ("RID"). Such interpreters adhere to a code of professional conduct[6] and are able to interpret effectively, accurately, and impartially, using any necessary specialized vocabulary to facilitate effective communication for inmates who are deaf and hard of hearing. This will allow the deaf and hard of hearing full participation in and benefit from programs, services, and activities provided by the BOP, including, but not limited to, medical services, mental healthcare services, workshops, vocational trainings, educational programs, and regular and emergency meetings with BOP personnel, staff, wardens,

---

[5] *Model Policy for Law Enforcement on Communicating with People Who Are Deaf or Hard of Hearing*, DEPARTMENT OF JUSTICE (January 2006), http://www.ada.gov/lawenfmodpolicy.pdf.

[6] *See NAD-RID Code of Professional Conduct*, REGISTRY OF INTERPRETERS FOR THE DEAF (2005), http://www.rid.org/UserFiles/File/NAD_RID_ETHICS.pdf.

6

social workers, and law enforcement.  Sign language interpreting services must be made available upon request, as feasible.

### 2.    Visual Paging Systems

Visual Paging Systems, such as electronic reader boards, broadcast visual information related to important safety messages, emergency alerts, and announcements to individuals who are deaf and hard of hearing in compliance with Section 508 of the Rehabilitation Act[7].  Visual paging systems work through a digital signage network using display devices such as CRT monitors, LCD flat screen panels, plasma displays, split flap boards, high-definition TVs, and LEDs.  Visual Paging Systems are available in wireless and wired formats.  The installation of digital visual signage for a paging system throughout correctional institutions is necessary to provide visual information to individuals who are deaf or hard of hearing when audible announcements are broadcasted.

 

Examples of Visual Paging System in use at San Francisco Airport and Bainbridge Island Ferry

The installation of digital visual signage for a paging system throughout common areas and other inmates who are deaf or hard of hearing when audible announcements are broadcasted.  The BOP can program and store a number of generic alerting messages in the computer.  When an emergency or announcement arises, the staff can go to the computer and select and broadcast the appropriate messages which can then be observed through the visual paging system using BOP existing monitors.

### B.    Telecommunication Technology

---

[7] Section 508 of the Rehabilitation Act Amendments of 1998, Retrieved on September 8, 2012 from http://www.access-board.gov/sec508/guide/act.htm

There are a number of different types of telecommunications technologies that exist whose purpose is to improve communication between and among the deaf, the hard of hearing, and the hearing populations.  Currently, the City of Los Angeles Department on Disability, in collaboration with the LAPD Information Technology Division, is in the process of implementing a new telecommunication system to accommodate individuals who are deaf, deaf-blind, hard of hearing or have a speech disability to ensure effective communication with qualified individuals with disabilities.  This new telecommunication system includes the availability of:  1) VRI at the Public Counter and in Booking and Medical Areas; 2) Public Access videophones in the Housing Area and Booking Area; and 3) a Visual Paging System for Audible Announcements.  The LAPD has set aside funding in their budget for telecommunication technology for the new Metropolitan Jail facility and this project is currently in progress.

> 1. Teletypewriter for the Deaf ("TTY")

**Text Telephone** technology such as Teletypewriter for the Deaf ("TTY") is a sixty year old technology that utilizes a portable teletypewriter device that connects to a telephone system.  TTY employs interactive graphic typed communication through the transmission of coded signals across the standard telephone network.  Thus, digital communication takes place and can be read on a screen, monitor, or tape installed on the machine.

In the Unites States, most TTYs use a language or "communication code" called Baudot to transmit signals over the phone lines at a speed of 45.5 baud, which is the equivalent of 25 words per minute.  When a person types on his or her TTY, the letters are translated into sounds that are sent through the phone lines to the TTY at the other end of the line. The receiving TTY converts the Baudot signals back into letters and displays them on the screen.  TTYs do not have upper and lower case such as ("Aa," "Bb," etc.).  All outgoing text appears in lower case, while all incoming text appears in upper case. Furthermore, TTYs do not offer special characters such as "@" "&", "*", "%", or similar figures.  Baudot is considered to be an antiquated code.  Generally, an average rate for typing on a TTY is 33 – 40 words per minute (wpm) and an average professional typist types usually at speeds of 80 to 100 wpm.  Due to TTY equipment limitations, it transmits tones at the rate of 45 characters per minute no matter how fast a person types.   Hence, TTYs do not have high-speed transmission capability; additional time of 50 percent or more is needed when using a TTY due to its equipment limitation as well as user limited typing skill.

With today's expanding technologies such as text messaging, videophone, videocam, and instant messaging via computer and wireless devices, more deaf, deaf-blind, hard of hearing and people with speech disabilities are shifting to these technologies and fewer people are using TTY.[8]  Traditional TTY use is decreasing about 10% per year, to half in the past seven years. TTY traditional relay is still used considerably, but lowest in volume, and only 12% of the total relay volume.

2.     Videophone Equipment and Services

The variety of Internet Protocol (IP)-based communication devices, with capabilities such as voice, text, and video, are changing rapidly.  With emerging communication technologies becoming more available, individuals who are deaf and hard of hearing are purchasing PDAs, pagers, videophones, and other wireless devices for immediate telecommunication access.  The deaf and hard of hearing increasingly utilize these types of devices rather than relying on TTYs as their primary mode of telecommunication.

**Videophones** are telephones with a high-definition video display, capable of simultaneous two-way interactive video and audio for communication between people in real-time using separate internal high-speed bandwidth Internet telecommunication services, often at low or nominal costs. They are popular, relatively low-cost devices which can provide live video and audio streaming, and can be used with many software clients for both video calls and videoconferencing.

In the present day, videophones have become widely available at a reasonable cost.[9]  In addition, they are particularly useful to the deaf, hard of hearing and speech-impaired, who can use them with sign language, and are becoming increasingly popular for education, telemedicine and those with mobility issues.

a. **Public Access Videophone ("PAV")** is a multi-purpose, Internet-based communication that provides fully integrated video technology, standard payphone, videophone, keyboard and camera in one robust, vandalism-resistant device.

---

[8] United States Department of the Navy, Retrieved on September 8, 2012 from http://www.doncio.navy.mil/section508toolkit/sec08productstelcom.htm
[9] In some cases, Video Relay Service Providers offer videophone equipment at no cost to customers.



Public Access Videophone

The installation of PAV equipment in a bank of telephones where inmates utilize a telephone will enable individuals who are deaf, deaf-blind, and hard of hearing to make telephone calls, communicate with attorneys, doctors, clergy, or family members who utilize VRS or point-to-point video calls so as to communicate directly in their natural language, ASL. Additional PAV equipment should be installed in a private room for meetings between clients and attorneys or for communication with clergy to ensure that confidential and privileged information remains protected.

b. **Video Relay Services (VRS)** provide telephone access to Deaf and hard of hearing individuals via video instead of TTY.  Video Sign Language Interpreters are trained to relay conversations between hearing individuals and deaf or hard of hearing individuals whose primary language is ASL.  Sign Language Interpreters serve as a communication bridge; conversations are relayed from sign to voice and voice to sign utilizing video equipment.

VRS is free of charge to all telephone users, deaf or hearing, as mandated by the ADA.  The FCC regulates VRS services and provides the services under contract with a number of agencies.  VRS cannot be used as a substitute for in-person interpreting services where both deaf and hearing consumers are in the same location; VRS may only be used when consumers are connecting with one another through a telephone connection.

10



Video Relay Service (VRS)

3. **Videophone Remote Interpreting Service ("VRI")** is an interactive video teleconferencing system that utilizes a virtual Sign Language Interpreter at an off-site Video Interpreter Agency to interpret between sign language users and non-sign language users through high-speed internet-based video conferencing equipment. Video-conferencing equipment or other compatible equipment transmit both image and voice to the sign language user's location. At the same time, the sign language user's location transmits his/her image to the Video Remote Interpreter. This service can be provided in lieu of utilizing an on-site sign language interpreter.



Video Remote Interpreting (VRI)

This service can be provided when an interpreter cannot be physically present to interpret for two or more persons who are together at the same location.

## C. Implementation of Technological Solutions

The BOP must assess video conferencing equipment such as desktop PCs, laptops,

11

videophones, or other webcam solutions provided by major manufacturers of video conferencing devices.

1.          Videophone.

          Videophone equipment such as: ZVRS Z-150, Z-340, Z4, or Z4; Sorensen NTouch; Cisco IP Video Phone E20; or desktop computer with built-in webcam monitor or a laptop with a built-in webcam using desktop videoconferencing via mini-camera, speakers and microphone.  Videophones are provided by the following major brands in the following models:

**ZVRS**



Z-150                              Z-340                              Z-4

Z-OZO                          Z-20

**Sorenson**


VP200


nTouch


nTouch

**Purple**


Purple P-3


Purple -3


Cisco Video Phone E20

2.        **Internet Connection:**

The BOP has to contract with an Internet Service Provider (ISP), a company that provides service, using a high-speed DSL or cable modem, to allow a user to access the Internet. The two major choices for Internet settings are DSL and cable Internet. DSL Internet connections work through your phone lines, effectively splitting them in two components: one part for voice network and the other part for Internet data network. The other option, cable, works through the same cable outlets into which you plug your TV. A cable modem for broadband Internet connection can be utilized. The coaxial cable used by the cable TV provides much greater bandwidth than a telephone line. A cable Internet modem can be used to achieve extremely fast access to the Internet.

To register and obtain a videophone and VRS/VRI services, the BOP must complete a form and submit the application online. Once the form is submitted, a customer service representative will contact the BOP via email with a local 10-digit number. A professional installer will make an appointment to visit the BOP and assist with installing the videophone. The professional installer will be responsible for troubleshooting networking issues and training customers (*e.g.*, deaf or hard of hearing inmates and BOP staff) on how to place a call using a VRS. Installation and technical support

13

are always free.

## 3.   Recording Calls

The Bureau of Prisons monitors conversations on all inmate telephones located within the institutions. Most systems record all of the calls and store the recordings for up to five years.  Video Relay Service or any Telecommunications Relay Service (TRS) providers do not keep records of the contents of any conversation to ensure that confidentiality of VRS users is maintained.   The following are three possible solutions to record video calls.

### Solution #1 - Stand-alone Videophone equipped with Video/Audio Line Output

Stand-alone videophone connects to Digital Video Disc (DVD) Recorder using cord from the LINE OUT (Video/Audio) jacks and plugs into LINE IN (Video/Audio) jacks of the recording device to capture audio and video signals to be stored for later review.

Disc is utilized to store video, audio and data.  DVD-ROM can only be read and not written nor erased. Blank recordable DVD discs (DVD-R and DVD+R) can be recorded once using a DVD recorder and then function as a DVD-ROM. Rewritable DVDs (DVD-RW, DVD+RW, and DVD-RAM) can be recorded and erased multiple times.

### Solution #2 - TV equipped with an HDMI input jack for Videophone

Sorenson nTouch VP is made up of three separate hardware devices: the Main Unit, the Remote Camera Unit (RCU), and the hand-held remote control. The Main Unit connects to the Remote Camera Unit with a USB cable attached to the RCU.  The Main Unit connects to a standard TV set or to an HDTV using either a composite video cable or an HDMI cable.  nTouch VP supports both standard and high definition video signals.

DVD-R connects to the main unit using cord from the LINE OUT (Video/Audio) jacks and plugs into LINE IN (Video/Audio) jacks of the recording device for recording to capture audio and video signals

14

to be stored for later review.

**Solution #3 –Computer with Videophone Application**

ZVRS Z-4 application for computer with Windows Vista or newer operating system* could be utilized to record video calls.  The call may be recorded by using recording feature (red button to the right of the self-view screen).  The user clicks the red "RECORD A CALL" button to begin recording.  The button will turn blue to indicate it is recording. NOTE:  The other caller(s) will see a message indicating that the call is being recorded.

To access and export all recorded calls, click on the "VIDEO RECORDER" icon to open the Video Recorder screen.  In the Video Recorder window, there are four columns for each recording: Name, Date, Time and Duration.  Copies of selected recording could be saved as MOV File (*.mov) and be stored or exported to a chosen location for later review.  The recording video will automatically start playing after a recorded call have selected in the playback window.  The recorded call may be paused or playback if needed.

*Note:  Computer with Microsoft Windows such as Vista, Windows 7 or newer operating systems that allows the removal of all Internet web browsers.

**Conclusion**

The BOP must provide Mr. Berke and other inmates who are deaf and hard of hearing with an "equal opportunity to participate in, and enjoy the benefits of, a program or activity" offered by the BOP.[10] To ensure an equal opportunity, the BOP must: a) assess, evaluate, analyze, and make reasonable modifications in policies, practices and procedures; b) remove barriers to access; and c) provide auxiliary aids and services including, but not limited to: Sign Language Interpreters; Closed Captioning; videophones and VRS to ensure effective communication for individuals who are deaf, deaf-blind, and hard of hearing.

---

[10] 28 C.F.R. § 39.160(a)(1)

The accommodations requested by Mr. Berke (which are equally applicable to other deaf, deaf-blind, and hard of hearing inmates) must be given "primary consideration" by the BOP.[11] Reasonable accommodations for Mr. Berke include: providing videophones for telecommunication access; installing visual emergency alarms and lighted signal boards; modifying the time or location of a treatment program to allow equal participation; providing hearing aids; and providing ASL interpreters (either in person or through VRS) for BOP programs and activities. Mr. Berke requested these accommodations and the BOP must give his requests "primary consideration." Furthermore, there are no technological impairments to implementing these accommodations at USP Tucson or other BOP facilities. As noted above, the LAPD is currently at work implementing a new telecommunication system that includes videophones, VRS, and a visual paging system. The BOP must explore the implementation of a similar telecommunication system at USP Tucson and other BOP facilities should Mr. Berke-be transferred in the future. Such a system would include PAVs, VRI, Visual Paging Systems, and Visual Smoke Alarms to accommodate Mr. Berke and other individuals who are deaf, deaf-blind, hard of hearing or have a speech disability to ensure effective communication.

---

[11] 28 C.F.R. § 39.160(a)(1)(i)

**EXHIBIT A**
**Richard Lorenzo Ray** *curriculum vitae*

**RICHARD LORENZO RAY**
10761 Blix Street, #206
Toluca Lake, California 91602
(213) 261-3728 Voice
(213) 202-3470 TTY
E-mail Address: RichardLorenzoRay@gmail.com

| | | |
|---|---|---|
| **PROFESSIONAL** | City of Los Angeles, Department on Disability | |
| **EXPERIENCE:** | ADA Compliance Coordinator | |
| | Los Angeles, California 90013 | January 2003 to Present |

Assist, monitor, and oversee Citywide implementation of the 1973 Rehabilitation Act and the 1990 Americans with Disabilities Act (ADA) Self-Evaluation and Transition Plan including facilitating access for individuals with disabilities to City programs, services, activities, and public meetings.   Work collaboration with other City Departments including Los Angeles Police Department, Fire Department, Emergency Management Department, Los Angeles World Airports, and other City departments in the implementation of City-wide emergency preparedness program for people with disabilities.   Provide technical expertise regarding telecommunications technology to meet the needs of people with disabilities before, during and after emergencies.   Provide assistance to individuals with disabilities during natural disaster and emergency situations.   Provide technical assistance and resources to Information Technology Agency to ensure that the City website is accessible and usable by persons with disabilities in compliance with Section 508 of the FCC (Federal Communications Commission). Conduct outreach and work with community with disabilities, including individuals who are deaf, deaf-blind and hard-of hearing wishing to conduct routine City business through the provisions of auxiliary aids and services such as Sign Language interpreting services, assistive listening devices, video remote interpreting services, computer assisted real-time captioning services to ensure effective communication. Conduct research and implement various adaptive technology, including, but not limited to, software programs, adaptive equipment, provision of work site modifications, training programs, as well as programs to enhance occupational skills.   Update and maintain emerging technology to provide telecommunication access to individuals with disabilities in City programs, which includes 9-1-1, 3-1-1, 1-888-ASK-LAPD, Police Stations, and Building and Safety, Library, and other City public points of contact. Develop and administer Personal Services Contracts for City employees with disabilities who need assistance such as readers, attendants, and note-taking services.   Administer contracts with agencies that provide auxiliary aids and communication services. Coordinate recruitment and placement of 504 ADA assistants and sign language interpreter services, as well as evaluate for recommendation on worksite modifications.   Develop in-service training programs for City employees, which include instruction in using the TTY, Telecommunication Relay Services, American Sign Language and orientation to Deaf and hard-of-hearing cultures. The in-service training programs also include Sections 501, 503, 504, and 508 of the Rehabilitation Act of 1973, Telecommunications Act of 1996, Titles I, II, III and IV of the ADA, and Architectural Barriers Act (ABA), and Title 24 of the California laws. Coordinate investigation and complaint follow up on public allegations and violations of ADA Title II regulations, ADAAG (ADA Accessibility Guidelines) and related architectural access building codes.

County of Los Angeles, Office of Affirmative Action Compliance
Deputy ADA Compliance Officer
Los Angeles, California 90012                    July 2002 – January 2003

Assisted in the implementation of the 1973 Rehabilitation Act and the 1990 Americans with Disabilities Act (ADA) including facilitating access for individuals with disabilities to County of Los Angeles services, activities, and public meetings. Coordinated and monitored County departmental compliance with disability civil rights laws and regulations.    Assisted County departments with effective implementation of the ADA mandates. Investigated public allegations and violations of ADA Title II regulations, ADAAG and related architectural access building codes.    Developed and conducted disability training programs for County departments, County contractors and community groups.

City of Los Angeles, Department on Disability
ADA Compliance Officer
(Deaf and Hard-of-Hearing Services Coordinator)
Los Angeles, California 90013                    June 1992 – June 2002

Assisted in the implementation of the 1973 Rehabilitation Act and the 1990 Americans with Disabilities Act (ADA) including facilitating access for individuals with disabilities to City services, activities, and public meetings. Conducted outreach activities to the community who are deaf and hard-of-hearing on the availability of programs and services accessible through Teletypewriter for the Deaf (TTY) and/or sign language interpreter. Worked with deaf and hard-of-hearing individuals wishing to conduct routine City business to obtain auxiliary aids and services. Developed in-service training programs, which include instruction of using the TTY, Telecommunication Relay Services, American Sign Language and orientation to Deaf and hard-of-hearing cultures. The in-service training programs also include Section 504 of the Rehabilitation Act of 1973, the Titles I, II, III and IV of the ADA and Title 24 of the California laws.    Conducted research on various funding sources to implement the ADA such as purchase of software programs, adaptive equipment, provision of work site modifications, training programs, as well as programs to enhance occupational skills. Provided assistance to individuals with disabilities during natural and emergency situations.   Coordinated investigation and complaint follow up.

Greater Los Angeles Council on Deafness
Outreach Coordinator
Los Angeles, California 90041                    July 1990 - May 1992

Planned and supervised the day-to-day activities of the Outreach Office. Provided direct counseling, personal advocacy and other assistance to program participants. Developed and implemented education, advocacy and resource development efforts in the Outreach Office.

Mayor's Office for the Disabled
Project Coordinator
Los Angeles, California 90012                    January 1988 - June 1990

Worked with the State of California Department of Rehabilitation and community-based organizations. Facilitated access for individuals who are Deaf and hard-of-hearing to city services, activities and public meetings; worked with individuals on obtaining interpreters to conduct routine City business; developed in-service training programs which included instruction in the use of Telecommunication Devices for

A-2

the Deaf (TDD); Telecommunications Relay Services; California Relay Services; American Sign Language and orientation to the deaf and hard-of-hearing cultures; established appropriate methods of access for and provided technical assistance to City departments regarding the special needs of the constituents who are deaf and hard-of-hearing.   Represented the City on issues concerning all communities with disabilities.

Mayor's Office for the Handicapped
Vocational Placement Counselor
Los Angeles, California 90012                    May 1986 - December 1987

Provided vocational counseling to program participants, which included: assessment, preparation of individual employability, preparation of development plans, identifying placement opportunities, monitored client progress on the job.

Self Actualization Institute for the Deaf
Educational Therapist
Los Angeles, California 90028                    November 1985 – May 1986

Instructed low-functioning adults with hearing impairments in developing pre-vocational skills, as well as independent living skills.   Supervised students' interactions with peers, other professional support personnel, family members and the public.

**EDUCATION:**          Loyola Law School
                        Western Law Center for Disability Rights
                        Los Angeles, California
                        Disability Rights Masters Certificate
                        September 2000

                        City of Los Angeles, Personnel Department
                        Team to Win and Human Relations Skills Program
                        February 1999

                        University of California, Los Angeles
                        UCLA Extension Program
                        Los Angeles, California
                        Leadership for the 21st Century Certificate
                        November 1998

                        California State University, Northridge
                        Northridge, California
                        Liberal Studies
                        1984

**Membership in Professional Organizations:**

Federal Communications Commission, Emergency Access Advisory Committee, Co-Chair, January 2011 to Present

National Advisory Board of Preparedness and Emergency Response Research Center, University of Berkeley, May 2010 to Present

National Emergency Number Association, Accessibility Committee, Chair, June 2005 to Present

California Association for the Deaf, President, July 2005 to August 2009

California Public Utilities Commission, Deaf and Disabled Telecommunications Program - Equipment Program Advisory Committee, November 2004 to Present

City of Pasadena Mayor's Committee for the Employment of Persons with Disabilities, March 2003 to June 2008

Autry Museum of Western Heritage – Encounters/Overland Exhibition Advisory Committee, March 2002 to April 2005

Payphone Service Providers - Enforcement, TTY Interim Placement Committee, Vice-Chair, February 1999 to August 2001

Greater Los Angeles Agency on Deafness, Council of Organization Advisory Board, President, January 1999 to October 2000

National Association for the Deaf, 9-1-1 Emergency/Warning Systems Standard Committee, Chair, November 1998 to July 2002

Deaf Entertainment Foundation, Parliamentary Advisor, 1997 to July 2000

California Public Utilities Commission, Deaf and Disabled Telecommunication Program Administrative Committee, Vice-Chair, September 1995 to 2001

National Emergency Number Association, 9-1-1, Accessibility Committee, June 1994 to June 2005

Los Angeles County Metropolitan Transportation Authority, Service Authority for Freeway Emergencies, 1994 to 2004

County of Los Angeles, Commission on Human Relations, Media Image Coalition, 1992 to 2000

Los Angeles Commission on Assaults Against Women, Deaf Services Program, 1989 to 1997

KABC Television Advisory Board, 1989 to 1992

California State University, Los Angeles, Advisory Committee, 1988 to 1990

**Media:**

Technical Advisor, Documentary, "A Fine Day With Spare Parts", Los Angeles, 2000

Technical Advisor, Los Angeles Police Department Training Videotape, "Interacting with the Deaf and Hard of Hearing", Los Angeles, 2000

Technical Advisor, Los Angeles Police Department Training Videotape, "Using your TDD", Los Angeles, 1999

Writer, Producer, and Director of video, "9-1-1 TTY Emergency Response", Los Angeles, 1995

Guest Presenter, "Disabilities and Disasters: Five Years of ADA Implementation", Broadcast, Federal Emergency Management Agency, Washington, D.C., 1995

Host, Documentary videotape, "Understanding Deafness", House Ear Institute, Los Angeles, 1988

**Awards and Recognitions:**

Certificate of Recognition, Federal Communications Commission, February 2012

Resolution of Commendation, City Council of the City of Los Angeles, September 2011

Jane Small Leadership Awards, Los Angeles County Commission on Disability, 2010

Certificate of Recognition, Disability Rights Legal Center, October 2009

Certificate of Recognition, Office of the Mayor and City Council of the City of Los Angeles, September 2009

Certificate of Appreciation, California Public Utilities Commission, March 2006

Lou Fant Distinguished Service Award, Registry of Interpreters for the Deaf, May 2003

Certificate of Appreciation, Office of the Mayor, Crisis Response Team (CRT), November 2003

Resolution of Commendation, Office of the Mayor and City Council of the City of Los Angeles, June 2002

Certificate of Commendation, Office of the Mayor Richard Riordan and Councilmember Nick Pacheco, City of Los Angeles, May 2001

Certificate of Commendation, Office of Chief of Police Bernard C. Parks, Los Angeles Police Department, City of Los Angeles, May 2001

Outstanding Service Award, Greater Los Angeles Agency on Deafness, May 2001 Golden Poppies Awards, California Association for the Deaf, July 1999

Certificate of Appreciation, California Association for the Deaf, August 1999

Certificate of Commendation, Office of the Councilmember Richard Alatorre, City of Los Angeles, May 1994

Man of the Year, Greater Los Angeles Agency on Deafness, May 1994

Certificate of Commendation, Office of the Mayor Tom Bradley, City of Los Angeles, June 1993

Certificate of Commendation, City of Los Angeles Department of Recreation and Parks, 1993

Outstanding Contributions, Los Angeles Times, May 1993

Certification of Appreciation, United States Department of Transportation, Federal Aviation Administration, October 1992

Commendation, United States Air Force, Space Division, October 1989

Outstanding Contributions, Los Angeles Times, 1993

**Expert Witness Reports and/or Testimony:**

*Berke* v. *U.S. Bureau of Prisons, et al.*, CV 1:12-cv-01347-ESH, July 2008

**Seminar, and Workshop Presentations:**

**Recent Selected Invited International Conference Presentations: N/A**

**Selected Recent Invited National and Regional Conference Presentations:**
**Service:**

1995
**Federal Emergency Management Agency, Washington, D.C.**
**Disabilities and Disasters: Five Years of ADA Implementation**
(Broadcast)
Guest Presenter

2007
**National Emergency Number Association**
Annual Conference
**Emerging Technologies, Accessibility and Impact on PSAPs &**
**Video Relay and IP Relay Centers – PSAP Interaction**

June 2008
**National Emergency Number Association**
**Annual Conference**
**Emergency Mass Notification through Technologies**

**National Emergency Number Association**
**Annual Conference**
**Sign Language Interpreter and Telecommunicators**

June 2009
**National Emergency Number Association**
**Annual Conference**
**Registry & Personal Callers Information**

September 2009
**Wireless Emergency Communications**
**State of Technology Conference**
**Wireless Alert Accessibility: Technical Challenges and Opportunities**

June 2010
**National Emergency Number Association**
**Annual Conference**

A-7

**ADA & Federal Law Compliance**

**National Emergency Number Association**
**Annual Conference**
**PSAP TTY Requirements: Comply or Else!**

November 2010
**Centers for Disease Control and Prevention**
**Preparedness Emergency Response Research Center**
**Policies and Regulation**

January 2011
**Federal Communications Commission**
**Emergency Access Advisory Committee**
**Telecommunications Relay Services (TRS) Emergency Call Handling**

June 2011
**21st Century Communications and Video Accessibility Act – What will it mean for 9-1-1?**

August 2011
**APCO/NENA Pacific Chapter**
**NG9-1-1 Technology Forum**

September 2011
**Mobility Summit**
**Federal Communications Commission**
**Emergency Access Advisory Committee**

March 2012
**NENA: 9-1-1 Goes to Washington**
**Emergency Access Advisory Committee Update**

A-8

# EXHIBIT B

# Materials provided

a) *Berke* v. *U.S. Bureau of Prisons, et al.*, CV 1:12-cv-01347-ESH – Complaint For Violations of the Rehabilitation Act and Violations of the First, Fifth and Eighth Amendments dated August 14, 2012 (24 pages excluding appendix)