# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **LARRY BERKE,** | |
| *Plaintiff*, | |
| v. | **Civil Action No. 12-1347 (ESH)** |
| **FEDERAL BUREAU OF PRISONS,** *et al.*, | |
| *Defendants.* | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Larry Berke, a deaf individual, filed suit against the Federal Bureau of Prisons ("BOP") and Charles Samuels, Jr., in his official capacity as the Director of the BOP ("Defendants"), alleging that defendants discriminated against him in violation of the Rehabilitation Act, 29 U.S.C. § 790 *et seq.*, by failing to adequately accommodate his deafness. On September 25, 2012, this Court granted in part plaintiff's motion for a preliminary injunction, ordering defendants to determine whether the videophone system requested by plaintiff could be installed without resulting in "undue financial and administrative burdens," as required by 28 C.F.R. § 39.160(d). Plaintiff now seeks to recover attorney's fees and costs pursuant to 29 U.S.C. § 794a(b) and Federal Rule of Civil Procedure 54(d). (Plaintiff's Motion for Award of Attorney's Fees and Costs, Oct. 9, 2012 [ECF No. 20] ("Mot.").) Upon consideration of plaintiff's motion, defendants' opposition thereto (Defendants' Opposition to Plaintiff's Motion for Attorney Fees and Costs, Jan. 31, 2013 [ECF No. 31] ("Opp'n")), and plaintiff's reply (Reply in Further Support of Plaintiff's Motion for Award of Attorney's Fees and Costs, Feb. 7, 2013 [ECF No. 32] ("Reply")), and for the reasons explained below, the Court will grant in part and deny in part plaintiff's motion.

**BACKGROUND**

In December 2011, plaintiff pled guilty to conspiracy to commit mail fraud under 18

U.S.C. § 1349.  (*See* Complaint Ex. 1, Aug. 14, 2012 [ECF No. 1-1] at 2.)  The indictment

asserted that Mr. Berke, along with his wife, son, and other individuals,[1] submitted fraudulent

claims to the United States government for reimbursement for providing telephone services for

hearing-impaired individuals.  He was sentenced to 24 months in prison, followed by three years

of supervised release.  (*See id.* at 3-4.)

On August 14, 2012, plaintiff filed a complaint alleging that defendants violated the

Rehabilitation Act by planning to incarcerate him at U.S. Penitentiary Florence ADMAX

Satellite Camp, a facility that he alleged did not have adequate accommodations for deaf

inmates. (Mot. at 1-2.)  Plaintiff initially moved for a temporary restraining order, which was

later converted into a motion for a preliminary injunction.

After plaintiff filed his complaint, but before this Court ruled on the preliminary

injunction, defendants reassigned plaintiff to the ADMAX Satellite Camp in Tucson, Arizona

("SPC Tucson").  (Mot. at 2 n.1; Opp'n at 3 & n.1.)  They also agreed to provide Mr. Berke with

various accommodations at that facility, including closed-captioning on prison telephones, the

assignment of an inmate disability helper, access to a TTY phone, access to a live interpreter for

certain events, visual alarms, access to inmate email, dry erase boards and pens, and appropriate

medical attention.  (*See* Mot. at 4.)  Those accommodations were reduced to writing in a

declaration by Scott Pennington, a Unit Manager at SPC Tucson.  (*See* Declaration of Scott R.

Pennington, Sept. 24, 2012 [ECF No. 14-2].)  Plaintiff nevertheless chose to proceed with this

litigation to determine whether defendants were in violation of Section 504 of the Rehabilitation

---

[1] Mr. Berke's wife, his son, and other co-conspirators are also hearing-impaired.

Act by failing to provide him with access to videophone technology, as opposed to a TTY phone. (*See* Preliminary Injunction Hearing Transcript [ECF No. 25] ("Tr.") at 5 ("[W]e're here on one issue and one issue only still . . . which has to do with whether they're required to provide an accommodation to the plaintiff regarding the videophone system.").)[2]

On September 25, 2012, this Court held a hearing on the preliminary injunction motion. Consistent with their written motions, defendants argued that the installation of a videophone "would result in undue financial and administrative burdens," especially given the difficulty in monitoring videophone communications, and thus they were not required to offer that accommodation in light of 28 C.F.R. § 39.160(d). (*See* Tr. at 165-66.) However, as the Court pointed out, an agency's determination that the requested accommodation would result in such burdens must be "accompanied by a written statement of the reasons for reaching that conclusion." 28 C.F.R. § 39.160(d). Because defendants had not done any analysis to determine whether it could reasonably comply with plaintiff's request, the Court ruled that defendants had not met their burden of proving that the installation of a videophone system would result in undue financial and administrative burdens. (*See* Tr. at 167-69.) The Court therefore granted plaintiff's motion for a preliminary injunction in part and ordered the defendants to "undertake an investigation or examination to determine whether or not [the videophone system] could be installed consistent with their security requirements." (*Id.* at 167.) However, the Court denied plaintiff's motion insofar as it sought an order requiring the installation of the videophone system. (*Id.* at 167-68.) The Court also signed off on the stipulation agreed to by the parties

---

[2] Using the TTY phone system, a deaf individual types a sentence into the system in English, and the system then transmits a signal through a phone land line to another TTY machine, which transcribes it into a typed English message on the other end. (*See* Tr. at 26-27.) The videophone system, on the other hand, allows deaf individuals to see each other on a screen so that they can use their native language—American Sign Language—to communicate. (*See id.* at 14.)

reflecting their agreement that the BOP would provide Mr. Berke with the above-mentioned accommodations.  (Stipulation and Order, Sept. 27, 2012 [ECF No. 18] ("Stip.").)

## ANALYSIS

The Rehabilitation Act provides that "[i]n any action or proceeding to enforce or charge a violation of a provision of this subchapter, the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs."  29 U.S.C. § 794a(b).  The Court must first determine whether, in light of the partial relief granted by this Court, plaintiff is properly considered a "prevailing party" under the Act.  Then, assuming plaintiff is in fact entitled to recover costs, the Court must determine whether plaintiff's requested costs and attendant attorney's fees are reasonable under the law.

## I.   PREVAILING PARTY

A prevailing party is "one who has been awarded some relief by a court."  *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 603 (2001).  The Supreme Court has long held that the "touchstone" of the prevailing party inquiry is "the material alteration of the legal relationship of the parties."  *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792-93 (1989).  Thus, in *Buckhannon*, the Supreme Court rejected the application of the "catalyst theory," which allows an award of attorney's fees if the plaintiff's lawsuit brings about a voluntary change in the defendant's conduct.[3]  532 U.S. at 605.  Instead, "for a litigant to be a 'prevailing party,' there must have been a 'judicially sanctioned change in the legal relationship of the parties.'"  *Edmonds v. F.B.I.*, 417 F.3d 1319, 1322 (D.C.

---

[3] Although *Buckhannon* involved the Americans with Disabilities Act and the Fair Housing Amendments Act, the Supreme Court confirmed in that case that they "have interpreted these fee-shifting provisions consistently."  532 U.S. at 603 n.4; *see also Hensley v. Eckerhart*, 461 U.S. 424, 433 n.7 (1983) (noting that the standards for interpreting the meaning of "prevailing party" are consistent across "all cases in which Congress has authorized an award of fees to a 'prevailing party'").

Cir. 2005) (quoting *Buckhannon*, 532 U.S. at 605).  Such changes are brought about by

"enforceable judgments on the merits and court-ordered consent decrees." *Buckhannon*, 532

U.S. at 604.  Following *Buckhannon*, this Circuit articulated a three-part test for determining

prevailing-party status: "(1) there must be a 'court-ordered change in the legal relationship' of

the parties; (2) the judgment must be in favor of the party seeking the fees; and (3) the judicial

pronouncement must be accompanied by judicial relief." *Dist. of Columbia v. Straus*, 590 F.3d

898, 901 (D.C. Cir. 2010) (quoting *Thomas v. Nat'l Sci. Found.*, 330 F.3d 486, 492-93 (D.C. Cir.

2003)).

Plaintiff argues that he is a "prevailing party" based on two factors: (1) that "Defendants

agreed [by way of a stipulation] to provide him numerous necessary accommodations," and (2)

that "the Court granted his preliminary injunction in part."  (Mot. at 5.)

### A.       Transfer to SPC Tucson and Other Accommodations

Plaintiff claims that he is a prevailing party because he "secured the BOP's agreement to

provide numerous accommodations requested by Mr. Berke."  (Reply at 3.)  He notes that "[i]t

was not until after the lawsuit was filed that Defendants agreed to provide any accommodations."

(*Id.* (emphasis omitted).)  However, that type of "voluntary change in conduct" is precisely what

is contemplated by the now-rejected "catalyst theory," *see Buckhannon*, 532 U.S. at 605, and

thus, those accommodations are insufficient to render plaintiff a prevailing party.

Plaintiff does not—and cannot—claim that either his transfer to SPC Tucson or the

accommodations the BOP agreed to provide him at that facility were the result of an

"enforceable judgment[] on the merits" or a "court-ordered consent decree[]." *Buckhannon*, 532

U.S. at 604.  The parties provided the Court with a stipulation listing the accommodations that

the BOP had already agreed to provide Mr. Berke, and the Court signed off on that agreement to

acknowledge the resolution of all issues besides the one that remained for the preliminary injunction hearing—namely, the request for a videophone.  (*See* Stip.)  However, that order did not "entail the judicial approval and oversight involved in [a] consent decree[]," *Buckhannon*, 532 U.S. at 604 n.7, through which the Court would retain jurisdiction to ensure compliance with the terms of the stipulation.  *Cf. Oil, Chem. & Atomic Workers Int'l Union, AFL-CIO v. Dep't of Energy*, 288 F.3d 452, 457 (D.C. Cir. 2002), *superseded by statute on other grounds*, 5 U.S.C. § 552(a)(4)(E) (holding that the Court's entering of a "Stipulation and Order" approving the parties' terms of dismissal did not amount to a "court-ordered consent decree" that would render the plaintiff the prevailing party).  Thus, the Court does not find that plaintiff was a "prevailing party" because of the accommodations the BOP agreed to provide him at SPC Tucson.  However, plaintiff is nevertheless entitled to recover attorney's fees based on his partial success at the preliminary injunction hearing.

> **B.  Partial Grant of Preliminary Injunction Motion**

While the Court declined to order the BOP to install videophones for plaintiff's use, (Tr. at 168), it did order, at the preliminary injunction hearing, the BOP "to comply with the regulations" by investigating by a date certain whether videophones could be installed without resulting in undue financial or administrative burdens.  (*Id.* at 167.)  Although plaintiff did not obtain the exact relief that he sought, this order was nevertheless sufficient to render him a "prevailing party" for purposes of recovering attorney's fees.

Defendants insist that because the Court did not order the installation of the videophone system, "Plaintiff did not get the relief he originally sought."  (Opp'n at 11.)  While it is true that he did not obtain the installation of a videophone system (as opposed to use of the TTY system), it is well established that a plaintiff need not obtain complete relief to be considered a prevailing

party; "a civil rights plaintiff must obtain *at least some relief* on the merits of his claim" that "materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992) (emphasis added). Prior to the Court's ruling, defendants had not determined whether videophones could reasonably be installed for plaintiff's use, but as a result of the ruling, they will be forced to make that determination. That is undeniably a change in the legal relationship between the parties that directly benefits the plaintiff, since defendants are now legally obligated to undertake steps that at a minimum will reassure plaintiff that the BOP has adequately considered his request for accommodation, and could possibly result in the implementation of such a videophone system. The fact that plaintiff may not have obtained all the relief he sought is relevant to determining the amount of attorney's fees that plaintiff can reasonably recover, but does not alter his status as a "prevailing party." *See infra* Section II.C.

## II.     REASONABLE FEES

Having determined that plaintiff is a prevailing party and is therefore entitled to recover a "reasonable attorney's fee" under 29 U.S.C. § 794a(b), the Court must now decide whether plaintiff's requested attorney's fees are, in fact, reasonable. "The initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Blum v. Stenson*, 465 U.S. 886, 888 (1984) (citing *Hensley v. Eckerhart*, 461 U.S. 424 (1983)). There is a strong presumption that this amount— known as the "lodestar"—represents a reasonable fee. *See Bd. of Tr. of Hotel & Rest. Emp. Local 25 v. JPR, Inc.*, 136 F.3d 794, 801 (D.C. Cir. 1998) (citing *Pennsylvania. v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986)).

A.      **Reasonable Hourly Rate**

The determination of a "reasonable hourly rate" requires an analysis of at least three elements:  "the attorneys' billing practices; the attorneys' skill, experience, and reputation; and the prevailing market rates in the relevant community."  *Covington v. Dist. of Columbia*, 57 F.3d 1101, 1107 (D.C. Cir. 1995).  The prevailing market rates can be established either by the rates at which prior fee awards have been made or based on published surveys of prevailing rates in the community, such as the U.S. Attorney's Office's *Laffey* matrix.  *Id.* at 1109.

Plaintiff in this case was represented by attorneys from the Washington Lawyers' Committee for Civil Rights and Urban Affairs (the "WLCCR") working together with attorneys from the law firm of Ballard Spahr LLP.[4]

1.      **WLCCR**

The WLCCR does not charge its clients a regular fee for its services, so it suggests that the Court should derive the reasonable hourly rate from what is known as the "updated *Laffey* matrix."[5]  (Mot. at 8-9.)  Defendants respond that the "USAO *Laffey* matrix"[6] is the appropriate starting point for determining the prevailing market rates in this jurisdiction.  (Opp'n at 14-15.) The Court agrees with defendants.

Although plaintiff is correct that courts in this jurisdiction have, at times, approved the use of the updated *Laffey* matrix, the USAO *Laffey* matrix is far more widely accepted.  *See, e.g.*, *Heller v. Dist. of Columbia*, 832 F. Supp. 2d 32, 48 (D.D.C. 2011) ("The Court finds the frequency with which the USAO Laffey Matrix rates are applied to be strong evidence of both

---

[4] According to the billing records, nine attorneys worked on this case, including four from the WLCCR.  This hardly seems like an efficient use of resources.

[5] The updated *Laffey* matrix is available at http://laffeymatrix.com/see.html.

[6] A copy of the USAO *Laffey* matrix is attached to defendants' Opposition as Attachment A.

their prevalence and their reasonableness."); *Miller v. Holzmann*, 575 F. Supp. 2d 18 n.29

(D.D.C. 2008) (noting the "widespread acceptance" of the USAO *Laffey* matrix); *Am. Lands

Alliance v. Norton*, 525 F. Supp. 2d 135, 150 (D.D.C. 2007) (referring to the USAO *Laffey*

matrix as the "standard matrix" in this jurisdiction).  One reason for this preference is that the

updated *Laffey* matrix "reflects *national* inflation trends," while the USAO matrix "relies on data

specific to the Washington, D.C. metropolitan area."  *Miller*, 575 F. Supp. 2d at 17.  Thus, courts

in this jurisdiction have frequently referred to the USAO *Laffey* matrix as "the benchmark for

reasonable fees in this Court."  *See, e.g.*, *id.* at 18 n.29 (quoting *Pleasants v. Ridge*, 424 F. Supp.

2d 67, 71 n.2 (D.D.C. 2006)).  This Court agrees that the USAO matrix more accurately reflects

the prevailing market rates in the Washington, D.C. legal market.  This is particularly true here,

where the hourly rates sought by the WLCCR attorneys under the updated *Laffey* matrix far

exceed even the rates sought by the private attorneys at Ballard Spahr.[7]

The Court therefore finds that a "reasonable hourly rate" for the work performed by the

WLCCR attorneys is the rate set out in the USAO *Laffey* matrix, as shown here:

| Attorney | USAO *Laffey* Matrix Hourly Rate |
|---|---|
| Gardner | $505 |
| Fornaci | $505 |
| Golden | $445 |
| Finkenstadt | $355 |

[7] For example, WLCCR attorneys Elaine Gardner and Philip Fornaci would each receive an hourly rate of $753 under the updated *Laffey* matrix based on their roughly 30 and 20 years of litigation experience, respectively.  (*See* Declaration of Elizabeth Elaine Gardner, Oct. 9, 2012 [ECF No. 20-3] ("Gardner Decl.") ¶¶ 4, 6, 13.)  The lead attorney on the case from Ballard Spahr, Constantinos Panagopoulos, with over 20 years of litigation experience, seeks only $550/hour.  (*See* Declaration of Constantinos Panagopoulos, Oct. 9, 2012 [ECF No. 20-4] ("Paganopoulos Decl.") at 7.)

###### 2.    **Ballard Spahr**

With respect to the attorneys from Ballard Spahr, the Court finds that their regular billing rates are reasonable.  In this Circuit, "an attorney's usual bill rate is presumptively the reasonable rate, provided that this rate is 'in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'"  *Kattan by Thomas v. Dist. of Columbia*, 995 F.2d 274, 278 (D.C. Cir. 1993) (quoting *Blum*, 465 U.S. at 895-96 n.11). As explained above, the USAO *Laffey* matrix is relevant evidence of the "prevailing" rates in the Washington, D.C. area.  The rates charged by the five Ballard Spahr attorneys who worked on this case, though not identical to the *Laffey* rates, are very much "in line" with them.  (*Compare* Paganopoulos Decl. Ex. A at 7 (showing hourly rates for each attorney) *with* Opp'n at 17 (showing USAO *Laffey* matrix rates for each attorney).)  For example, although attorney Panagopolous charges an hourly rate of $550 compared to the USAO *Laffey* rate of $505, Jonathan Lippert charged only $350, far lower than the $445 allowed for in the USAO *Laffey* matrix.  Altogether, two of the five Ballard Spahr attorneys charged higher rates than provided for by the USAO *Laffey* matrix, two charged lower rates, and one charged exactly the same rate. The Court therefore concludes that Ballard Spahr's standard billing rates are reasonable.

### B.    **Reasonable Hours Expended on the Litigation**

To determine the lodestar, the Court must multiply the reasonable hourly rates by "the number of hours reasonably expended on the litigation."  *Blum*, 465 U.S. at 888.  Both WLCCR and Ballard Spahr appear to have made a good-faith effort to eliminate hours billed for arguably duplicative or unnecessary work.  Ballard Spahr claims to have excluded 101.1 billable hours from their total, resulting in 188.1 hours billed.  (*See* Mot. at 10; Paganopoulos Decl. Ex. A at 7.) WLCCR has excluded 22.7 billable hours, for a total of 74.9.  (*See* Mot. at 10; Gardner Decl. at

10.)  Thus, the two entities eliminated roughly 35% and 23% of their hours worked, respectively. The Court therefore finds that the hours submitted by both entities are adequately documented and are "not excessive, redundant or otherwise unnecessary."  *Okla. Aerotronics, Inc. v. United States*, 943 F.2d 1344, 1347 (D.C. Cir. 1991).

### C.      Reduction Based on Limited Extent of Plaintiff's Success

However, the inquiry does not end with the determination of the lodestar.  To the contrary, that is simply the "starting point."  *Pleasants*, 424 F. Supp. 2d at 73.  The district court must still consider whether to adjust the award of attorney's fees in light of "the overall relief obtained by the plaintiff."  *Hensley*, 461 U.S. at 435.  "If the prevailing party achieved less than complete success, [the court] must reduce that base to reflect the degree of success achieved." *F.J. Vollmer Co. v. Magaw*, 102 F.3d 591, 599 (D.C. Cir. 1996).  The degree of success is determined by considering two questions:  "(1) whether the party failed to prevail on claims that were unrelated to the claims on which he succeeded, and (2) whether the party achieved a level of success that makes the hours expended a satisfactory basis for making the fee award." *Pleasants*, 424 F. Supp. 2d at 73.

The first of those inquiries is not at issue here, because all of plaintiff's claims were "based on the same factual scenario" and "the same legal theory."  *Goos v. Nat'l Ass'n of Realtors*, 68 F.3d 1380, 1384 (D.C. Cir. 1995); *see also Bolden v. J & R Inc.*, 135 F. Supp. 2d 177, 181 (D.D.C. 2001) ("The fact that Plaintiffs did not prevail on a number of other counts is of no significance because the underlying factual context . . . was the same for all claims."). Thus, the mere fact that plaintiff was not a "prevailing party" under the law with respect to the accommodations that defendants have agreed to provide him at SPC Tucson does not justify reducing the award of attorney's fees.

However, the Court concludes that the limited nature of the relief obtained by plaintiff at the preliminary injunction hearing does support a reduction in attorney's fees.  The Supreme Court has noted that, where a plaintiff's legal claims are all based upon the same factual scenario or legal theory, the court should determine fees by considering "the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Hensley*, 461 U.S. at 435.  The "most critical factor is the degree of success obtained."  *Id.* at 436.  Thus, "if the district court determines and explains why the total hours expended were not reasonable in relation to the results obtained—regardless of the number of claims raised—the court has discretion to reduce fees."  *Goos*, 68 F.3d at 1387.

Here, the majority of the work undertaken by plaintiff's counsel related to the briefing and hearing on the preliminary injunction.  At the hearing, the only issue was whether defendants were in violation of the Rehabilitation Act by failing to provide plaintiff access to a videophone system.  (Tr. at 5.)  Although the Court found that defendants had not complied with the Act's requirement that they provide a written explanation for their assertion that such an accommodation would result in undue financial or administrative burden, the Court did not order defendants to install the videophone system.  To the contrary, the Court concluded that, in light of the well-established rule that "it is not the Court's obligation to tell the Bureau of Prisons what or what not to do," the Court "cannot . . . order them to install [the videophone] upon his arrival." (*Id.* at 166-67.)  Instead, the Court simply ordered defendants to investigate whether such a system could reasonably be installed.  (*Id.* at 167.)  The outcome of that investigation remains to be seen and was in no way predetermined by this Court's ruling.  Even within that limited relief, the Court declined to force the government to move at plaintiff's desired pace; the Court noted that although plaintiff requested immediate action, because plaintiff himself had "sat on his

rights" for eight months, the BOP would have eight months in which to conduct the videophone study.  (*Id.* at 167-68.)  Thus, no videophone had been installed as of plaintiff's surrender date of September 27, 2012, and he has now served roughly seven months of his 24-month sentence without either the videophone system or a response from the BOP about its position as to installing such a system.

In recognition that this result can in no way be considered "full" relief, it is appropriate to significantly reduce the amount of attorney's fees that plaintiff may recover.  "There is no precise rule or formula for making these determinations.  The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success."  *Hensley*, 461 U.S. at 436.  Here, the Court cannot parse the attorneys' billing records to identify particular hours to exclude, since all hours were spent in pursuit of the videophone and other accommodations.  However, in light of the uncertainty as to whether plaintiff will ever gain access to his requested accommodation, and the at least eight-month window with no possibility of such an accommodation, the Court concludes that a 40% reduction in attorney's fees is appropriate.  Such an award is well within this Court's discretion.  *See Hensley*, 461 U.S. at 439 n. 14 (finding that district court in *Brown v. Bathke*, 588 F.2d 634 (8th Cir. 1978), was well within its discretion to award payment for only 57.75 of the attorneys' 174 hours spent on the case where plaintiff had sought reinstatement, lost wages, damages, and expungement of derogatory material from her employment record, but had been awarded only lost wages and expungement); *Fisher v. Friendship Public Charter Sch.*, 880 F. Supp. 2d 149, 153-54 (D.D.C. 2012) (reducing fees by 50% because plaintiff did not succeed on three of his four claims); *Roseboro v. Billington*, 618 F. Supp. 2d 85, 88-89 (D.D.C. 2009) (finding that a one-third reduction in fees is appropriate in light of the fact that plaintiff sought extensive

damages, reinstatement, and other relief, but was awarded only expungement of certain charges from his personnel record).

Using the USAO *Laffey* matrix rates for the WLCCR's attorneys, and Ballard Spahr's standard billing rates, but reducing the hours by 40%, the Court concludes that plaintiff is entitled to recover $20,975.70 in attorney's fees for the WLCCR's work, and $48,315.90 in attorney's fees for Ballard Spahr's work.

## III.    REASONABLE COSTS

As a prevailing party, plaintiff is also entitled to recover reasonable costs.  *See* Fed. R. Civ. P. 54(d).  28 U.S.C. § 1920 specifically enumerates several categories of costs that plaintiffs are entitled to receive, including: (1) fees of the clerk and marshal; (2) fees for printed or electronically recorded transcripts; (3) fees and disbursements for printing and witnesses; (4) fees for exemplification and the costs of making copies of any materials; (5) docket fees under § 1923; and (6) compensation of court appointed experts and compensation of interpreters.

Plaintiff seeks to recover $11,974.49 in costs, broken down as follows: (1) $122.70 for delivery service; (2) $1,028.53 for deposition transcripts; (3) $18.40 for duplicating; (4) $6,367.24 for expert witnesses; (5) $350.00 for filing fees; (6) $336.61 for Lexis research; (7) $11.60 for postage; (8) $3,267.50 for professional services, of which $1267.50 covers interpreters' fees and $2,000 is for costs incurred to produce a demonstrative video for the hearing; (9) $415.00 for service of subpoenas; (10) $28.41 for teleconferencing services; (11) $21.00 for travel expenses; and (12) $7.50 for Westlaw research.  (Paganopoulos Decl. Ex. A at 8.)[8]

---

[8] These numbers do not line up exactly with Mr. Paganopoulos' breakdown on page 8 of his declaration.  The Court has shifted the totals for each category based on a close examination of the receipts plaintiff submitted with his Reply Brief.  For example, one of the bills included

Certain of plaintiff's costs are undisputedly recoverable.  First, filing fees are plainly recoverable under 28 U.S.C. § 1920(1) and (5).  Second, the costs of deposition transcripts and "duplicating," which apparently refers to photocopying, are recoverable under § 1920(2) and (4). Third, the costs of the American Sign Language interpreters used with plaintiff's expert are recoverable under § 1920(6).

The rest of plaintiff's requested costs, however, do not fall within any of the specifically enumerated categories of § 1920.  Although it is true that Rule 54(d) allows judges some limited discretion to award costs not expressly authorized by § 1920, the statutory list "is not to be routinely expanded."  *Zdunek v. Wash. Metro. Area Transit Auth.*, 100 F.R.D. 689, 692 (D.D.C. 1983).  Indeed, the Supreme Court itself has declared that "the discretion given district judges to tax costs should be sparingly exercised with reference to expenses not specifically allowed by statute."  *Farmer v. Arabian Oil Co.*, 379 U.S. 227, 235 (1964).  Moreover, Rule 54(d) itself makes clear that "costs against the United States, its officers, and its agencies may be imposed only to the extent allowed by law."

Thus, this Court has declined to award costs for many of the categories of expenses for which plaintiff now seeks reimbursement, such as: (1) the use of professional process servers, *Zdunek*, 100 F.R.D. at 692 (noting that § 1920(1) only "authorizes taxation of the service fees charged by the United States Marshals Service"); (2) postage, *id.*; *El-Fadl v. Cent. Bank of Jordan*, 163 F.R.D. 389, 390 (D.D.C. 1995); (3) telephone services, *Zdunek*, 100 F.R.D. at 692; *El-Fadl*, 163 F.R.D. at 390; (4) delivery fees, *Johnson v. Holway*, 522 F. Supp. 2d 12, 19 (D.D.C. 2007) ("Administrative fees, like delivery costs, are . . . considered ordinary business

under the subheading "professional services" was from Dennis Cokley, whom plaintiff identifies as one of his expert witnesses.  (*See* Reply Ex. A at 34.)  The Court therefore shifted the $1,550.00 of that bill from the "professional services" category to the "expert witnesses" category.

expenses that cannot be recovered as costs.") (internal quotation marks omitted); *El-Fadl*, 163 F.R.D. at 390; (5) travel expenses, *Mass. Fair Share v. Law Enforcement Assistance Admin.*, 776 F.2d 1066, 1069-70 (D.C. Cir. 1985); *Conservation Force v. Salazar*, 2013 WL 66210, at *13 (D.D.C. Jan. 7, 2013); and (6) electronic legal research fees, *El-Fadl*, 163 F.R.D. at 391 (declining to tax as costs fees paid to online legal research services because it is more properly considered part of an attorney's fee). The Court concludes that the same result is appropriate with respect to the professional services plaintiff used to prepare a demonstrative video for trial, as that expense is not specifically covered by § 1920.

Additionally, it is well-established that expert witness fees are not included in "costs." The Supreme Court recently explained that § 1920 "does not authorize an award of any additional expert fees" beyond the standard travel reimbursement and per diem authorized for all witnesses under 28 U.S.C. § 1821. *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 297-98 (2006); *see also Zdunek*, 100 F.R.D. at 693 (same). The Court therefore finds that plaintiff is entitled to recover the $40 per diem for expert Richard Ray's appearance at the preliminary injunction hearing and the $40 per diem for expert Dennis Cokley's appearance at his deposition, but not any additional costs for their time.[9]

Plaintiff insists that he may recover costs beyond those specifically enumerated in § 1920 because the Rehabilitation Act incorporates the remedies available under the Civil Rights Act of 1964, which permits recovery of expert fees and other reasonable litigation expenses. (Mot. at 5.) Although plaintiff is correct that the Rehabilitation Act incorporates those remedies in *some* instances, it does not do so in this case. Specifically, 29 U.S.C. § 794a incorporates Title VI

---

[9] Although a prevailing party can ordinarily recover travel expenses for his witnesses, those costs are only available upon production of "[a] receipt or other evidence of actual costs," *see, e.g.*, 28 U.S.C. §§ 1821(c)(1), (3), which plaintiff has not provided.

16

remedies for all employment discrimination cases brought under § 791 of the Rehabilitation Act, *see* § 794a(a)(1), but only for certain claims brought under § 794.  Section 794 prohibits discrimination under (1) "any program or activity receiving Federal financial assistance" or (2) "any program or activity conducted by any Executive agency or by the United States Postal Service."  However, § 794a(a)(2) only incorporates Title VI remedies for the first category of claims—those that are brought against a "recipient of Federal assistance or Federal provider of such assistance."  It does not incorporate those remedies for claims brought against federal agencies conducting programs or activities.  Indeed, the Supreme Court itself noted this distinction in a different context, where it observed that although § 794a(a)(1) plainly waives sovereign immunity for *any* complaint brought under § 791, § 794a(a)(2) is not so "far-reaching," and only covers "'Federal provider[s]' of financial assistance."  *See Lane v. Pena*, 518 U.S. 187, 192-93 (1996).  Thus, plaintiff cannot rely on the Civil Rights Act's remedies to recover expert fees or any other costs that are not expressly provided for in 28 U.S.C. § 1920.[10]

Accordingly, the Court awards plaintiff costs for expenses related to filing fees, photocopying, deposition transcripts, interpreter services, and the per diem rates for his expert witnesses.  Plaintiff's receipts for those expenses total $2,744.43.  However, the Court will reduce those costs by 40%, in line with the reduction made to attorney's fees.  *See A.S. v. Dist. of Columbia*, 842 F. Supp. 2d 40, 49 (D.D.C. 2012) (reducing both attorney's fees and costs by 50% "based on plaintiffs' level of success"); *Dickens v. Friendship-Edison P.C.S.*, 724 F. Supp. 2d 113, 122 (D.D.C. 2010) (same).  Thus, the Court awards plaintiff $1,646.66 in costs.

---

[10] Plaintiff also seeks to recover expert witness fees under 42 U.S.C. § 1988.  (Mot. at 15.) However, that provision authorizes an award of expert fees "in any action or proceeding to enforce a provision of section 1981 or 1981a."  § 1988(c).  Because plaintiff's Rehabilitation Act claims "do not fall under either section," the Court may not rely on that section to award plaintiff expert fees.  *See Mason v. Me. Dep't of Corr.*, 387 F. Supp. 2d 57, 64-65 (D. Me. 2005).

**CONCLUSION**

For the foregoing reasons, plaintiff's Motion for Award of Attorney's Fees and Costs is granted in part and denied in part.  A separate Order accompanies this Memorandum Opinion.


_____/s/_____
ELLEN SEGAL HUVELLE
United States District Judge

Date:   April 29, 2013